IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-00058-LTB-CBS

SEVGI COOK,

           Plaintiff,

v.

JOHN M. MCHUGH, *Secretary of the Army*,

           Defendant.

---

RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS FOR LACK
OF JURISDICTION AND FOR SUMMARY JUDGMENT

---

Magistrate Judge Shaffer

## INTRODUCTION

Plaintiff Sevgi Cook seeks monetary damages and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), on the basis that the Army retaliated against her for engaging in a protected activity. This matter comes before the court on Defendant John M. McHugh's Motion to Dismiss for Lack of Jurisdiction and for Summary Judgment. [Doc. 18]. The motion was referred to the Magistrate Judge by Order of Reference dated November 13, 2014. [Doc. 19]. For the following reasons, the court recommends that Defendant's Motion to Dismiss and Motion for Summary Judgment be granted.

## PROCEDURAL HISTORY

Plaintiff filed her Amended Complaint [Doc. 7] on February 11, 2014. In this complaint, Plaintiff asserts a single claim of retaliation. *Id*. at ¶¶ 16-19. She alleges that in 2010 she engaged in protected activity, and because of that activity, the Army retaliated against her by taking the

1

following adverse actions: (1) in December 2010, she was moved from the front desk of the Larson Dental Clinic to the x-ray room, *id*. at ¶ 11; (2) in January 2011, Plaintiff's clinical privileges were permanently suspended, *id*. at ¶ 11; (3) from May to October 2011, the manager of the Larson Dental Clinic engaged in aggressive, hostile, bullying, and intimidating conduct, *id*. at ¶ 14; and (4) in June 2012 she was moved from the Larson Dental Clinic to the Soldier Readiness Processing Center, where she was unable to work an alternate work schedule, *id*. at ¶ 15.

Defendant filed a combined Motion to Dismiss for Lack of Jurisdiction and for Summary Judgment [Doc. 18] on November 12, 2014. Defendant argues that Plaintiff has failed to exhaust her administrative remedies as to the first three adverse actions and, therefore, the court lacks subject matter jurisdiction to review those allegations. Defendant further contends that the Army is entitled to summary judgment because — with respect to Plaintiff's transfer to the Soldier Readiness Processing Center — Plaintiff cannot establish a *prima facie* case of retaliation. *Id*. at 1-2. Plaintiff filed her response [Doc. 23] in opposition to Defendant's motion on December 22, 2014, and Defendant filed his reply [Doc. 29] on January 12, 2015.

## BACKGROUND

Plaintiff, who is originally from Turkey, completed dental school there and practiced as a dentist before immigrating to the United States. However, she chose not to practice dentistry in the U.S.A. because it would have required several additional years of schooling. Doc. 18-1 at 3[1]. Instead, she obtained a hygiene license and began her practice as a dental hygienist in Florida. *Id*. at 3-4.  In 2007, Plaintiff relocated to Colorado to work as a dental hygienist at Fort Carson, *id*. at 6, and she was ultimately assigned to work at the Larson Dental Clinic ("Larson Clinic"). Doc.

---

[1] The court cites to the page numbers assigned by the electronic filing system, as opposed to any pre-existing page numbers on the exhibits.

18-5. While at the Larson Clinic, Plaintiff worked under an alternate work schedule ("AWS"). Doc. 18-2 at 17. Under AWS, Plaintiff worked 80 hours per pay period and had every other Friday off of work. On the alternate Fridays, Plaintiff could leave work at 3:00 p.m. instead of 4:30 p.m. Doc. 18-1 at 8-9.

On May 26, 2010, Colonel Kraig Kenny — the Larson Clinic's Officer in Charge — gave Plaintiff a one-day suspension because she had failed to follow procedures and complete assigned tasks. Doc. 18-9 at 1. In his memorandum regarding the suspension, Col. Kenny noted that Plaintiff "repeatedly made the same mistakes despite receipt of feedback from audits and discussions; [her] patients often did not receive correct care . . . and needed additional care from other providers; [and] when other providers must correct [her] mistakes, such actions increase agency operational costs and require military members to spend additional time away from their duties." *Id*. at 1-2.

On July 26, 2010, Colonel John Etzenbach — the Commander of Fort Carson's Dental Activity ("DENTAC") — issued a summary suspension of Plaintiff's clinical practice. Doc. 18-10 at 1. According to Col. Etzenbach's memorandum, Plaintiff's practice was placed in abeyance because she (1) repeatedly provided treatment that was not planned by a doctor; (2) excessively used "gross debridement" without a follow-up evaluation; (3) performed certain procedures with no documentation of local anesthesia; and (4) had significant issues with proper record administration and documentation. *Id*. Because of the suspension, Plaintiff was not permitted to assist, perform any procedures, or provide any patient care. *Id*. On September 7, 2010, following a review of the temporary suspension by a Peer Review Panel, Col. Etzenbach suspended Plaintiff's clinical privileges indefinitely. Doc. 18-12 at 1.

Thereafter, in October 2010, Plaintiff initiated an Equal Employment Opportunity action ("October 2010 EEO Complaint") alleging that she had been discriminated against based upon her national origin when (1) her performance rating was changed; and (2) Col. Etzenbach suspended her privileges. *See* Doc. 23-9 at 2 (EEO counselor's report).

Plaintiff requested a review of her suspension before the Hearing Board. *See* Doc. 18-13 at 1. In December 2010, the Hearing Board unanimously voted to uphold the suspension of Plaintiff's clinical practice. *Id*. Based on this conclusion, Col. Etzenbach permanently suspended Plaintiff's privileges to practice dental hygiene at the Fort Carson dental facilities. *Id*. As a result of the loss of her dental hygiene privileges, Plaintiff was limited to taking x-rays, performing administrative duties, and performing procedures that a dental assistant could perform. *See* Doc. 18-2 at 12-13; Doc. 18-4 at 3.

In May 2012, Col. Etzenbach and Captain Benjamen Wilson — DENTAC's executive officer — discussed transferring Plaintiff to the Soldier Readiness Processing Center ("SRP"). Doc. 18-2 at 15. The SRP ensures soldiers' readiness for deployment and consists of, among other things, dental examinations and dental x-rays. Doc. 18-4 at 10. Because of the specific mission of the SRP — and due to the fact that soldiers visit the SRP site every day — it was not possible to have AWS; instead, SRP employees worked Monday through Friday. Doc. 18-2 at 17; Doc. 18-4 at 7. The SRP was typically staffed by one dentist and four dental assistants. Doc. 18-2 at 7. Prior to Plaintiff's transfer to the SRP, the x-ray position was filled by borrowing a dental assistant from each of the Fort Carson clinics on a daily basis. Doc. 18-4 at 10.

Ultimately, Cpt. Wilson decided to permanently transfer Plaintiff to the SRP because of (1) the high volume of x-rays being taken at the SRP; (2) the effort required to rotate x-ray technicians to the SRP on a daily basis; and (3) the fact that Plaintiff was underutilized at the

4

Larson Clinic, given the restrictions on her practice. *Id.* at 9-10. Cpt. Wilson and Staff Sergeant Marian Niemotko — the Non-Commissioned Officer in Charge of the Larson Clinic — informed Plaintiff in writing that she would be transferred to the SRP.[2] Doc. 26-1; Doc. 26-3.

On July 6, 2012, Plaintiff filed a request for counseling with the Army's Equal Employment Opportunity Office claiming that Sgt. Niemotko retaliated against her because she had filed the October 2010 EEO Complaint. Doc. 26-2 at 2. Plaintiff alleged that Sgt. Niemotko had transferred her to the SRP, which resulted in the loss of her AWS. *Id.* On August 13, 2012, Plaintiff filed her formal complaint of discrimination, wherein she again alleged retaliation on the basis of her transfer to the SRP and the loss of her AWS. Doc. 18-8 at 1. Her formal complaint also alleged that (1) in February and March 2012, she asked several co-workers to provide statements in her EEO investigation[3], but they refused to cooperate with the investigation; and (2) in May 2011, Mr. Passahow — a Larson Clinic manager — started giving her "a hard time" at work. *Id.* at 2. She further alleged that after she complained to "the chain of command," Mr. Passahow left her alone. *Id.*

On October 23, 2013, an Administrative Law Judge issued a final determination, without a hearing, that Plaintiff had failed to establish a prima facie case of retaliation. *See* Doc. 29-2 at 6-7.

## APPLICABLE LEGAL STANDARDS

### A.    Dismissal Pursuant to Fed. R. Civ. P. 12(h)(3)

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The objection that the court lacks subject

---

[2]  Captain Wilson notified Plaintiff on May 29, 2012. On June 5, 2012, Sgt. Niemotko notified Plaintiff that her move to the SRP would be effective on June 18, 2012.

[3]  It is unclear which EEO investigation Plaintiff is referencing. In addition to the October 2010 EEO Complaint, which is the protected activity in her current retaliation claim, Plaintiff apparently initiated informal EEO complaints in April 2010 and September 2010. *See* Doc. 23 at ¶¶ 43, 44.

matter jurisdiction may be raised at any time in the proceedings. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). The only distinction between a Rule 12(h)(3) motion and one made pursuant to Rule 12(b)(6) is simply that the former may be asserted at any time; analytically, they are the same. *See Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 884 n.3 (3d. Cir. 1992).

A motion to dismiss for a lack of subject matter jurisdiction may take two forms. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). It may facially attack a complaint's allegations or, as here, it may challenge the facts upon which subject matter jurisdiction depends. *Id*. at 1002-1003. As the Tenth Circuit stated in *Holt*:

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1003; *see also Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.    Summary Judgment Pursuant to Fed. R. Civ. P. 56(c)**

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there

is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).   Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).   A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson,* 477 U.S. at 248.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

## I.   Exhaustion of Administrative Remedies

In Plaintiff's amended judicial complaint [Doc. 7], she alleges that — because of the October 2010 EEO Complaint — Defendant retaliated against her when (1) she was moved from the front desk of the Larson Clinic to the x-ray room, *id*. at ¶ 11; (2) her clinical privileges were permanently suspended, *id*. at ¶ 11; (3) the manager of the Larson Clinic engaged in aggressive, hostile, bullying, and intimidating conduct, *id*. at ¶ 14; and (4) she was moved from the Larson Clinic to the SRP, which resulted in a loss of her AWS, *id*. at ¶ 15.

Defendant contends that this court lacks jurisdiction to consider allegations (1) through (3) because Plaintiff failed to file formal EEO charges alleging retaliation as a result of these

three events.[4] *See* Doc. 18 at 11. Defendant also argues, in the alternative, that Plaintiff failed to timely file an EEO complaint challenging these allegedly adverse actions. *Id*. The court agrees with Defendant that Plaintiff failed to exhaust her administrative remedies with respect to these three allegations.

### A.  Legal Framework

As a prerequisite to filing suit under Title VII, a plaintiff must exhaust her administrative remedies. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996).  Federal employees alleging retaliation must comply with specific administrative complaint procedures in order to exhaust their administrative remedies. *See generally* 29 C.F.R. §1614. This requirement "serves the dual purposes of 'protecting employers by giving them notice of the discrimination claims being brought against them' and 'providing the EEOC [or EEO office] with an opportunity to conciliate the claims.'" *Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014) (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004)).

The applicable regulations, as relevant to this case, require an aggrieved federal employee to consult with an EEO counselor before filing a formal complaint "in order to try and informally resolve the matter." 29 C.F.R. § 1614.105(a). The employee must initiate this contact "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Id*. § 1614.105(a)(1). During this initial counseling session, the counselor must, among other things, advise the employee that "only the claims raised in the precomplaint counseling (or issues or claims like or related to issues or claims raised in pre-complaint counseling) may be alleged in a subsequent complaint filed with the agency." *Id*. at § 1614.105(b)(1).

---

[4] Defendant concedes that Plaintiff exhausted her administrative remedies as to her transfer to the SRP (allegation #4). *See* Doc. 18 at 2.

If the matter is not resolved through the informal counseling, the counselor must inform the aggrieved person, in writing, that she may file a formal complaint against the allegedly discriminatory agency. *Id.* at § 1614.105(d). The formal complaint must be filed within "15 days of receipt of notice." *Id.*; *see also id.* § 1614.106(a) and (b). The employee may amend her complaint at any time prior to the conclusion of the investigation, but only to include claims like or related to those raised in the original complaint. *Id.* § 1614.106(d).

"To establish exhaustion, a Title VII Plaintiff must show that the claim is within the scope of the administrative investigation that could reasonably be expected to follow from the allegations in the charge." *Green*, 760 F.3d at 1140 (citing *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)). Consequently, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Jones v. UPS, Inc.*, 502 F.3d at 1186.

In the Tenth Circuit, the failure to file an administrative charge *at all* is a jurisdictional bar. *See Jones v. Runyon*, 91 F.3d at 1399. "But the untimeliness of an administrative claim, although an exhaustion issue, is not jurisdictional." *Green*, 760 F.3d at 1140 (citing *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002)).

**B.  Analysis**

Here, Plaintiff submitted her formal complaint of discrimination on August 13, 2012. Doc. 18-8. This charge, however, does not contain any allegations regarding her transfer from the front desk of the Larson Clinic to the x-ray room. *Id.* Nor does it include any factual allegations regarding the permanent suspension of her clinical privileges. *Id.* And Plaintiff has not offered any evidence that these allegations were ever presented to the EEOC. Consequently, because Plaintiff did not adequately present those claims in her formal EEO charge, the court

concludes that it lacks subject matter jurisdiction to consider those events. *Jones v. Runyon*, 91 F.3d at 1399 n.1 (noting that an EEOC filing, as opposed to a *timely* filing, is a jurisdictional requirement).

The court also concludes that Plaintiff's third allegation — regarding Mr. Passahow's behavior — should be dismissed. In her formal charge, Plaintiff alleged that in May 2011, Mr. Passahow began "giving her a hard time at work," but after Plaintiff complained to the chain of command, Mr. Passahow left her alone. Doc. 18-8 at 2. Plaintiff acknowledges that Mr. Passahow's alleged conduct occurred between May and October of 2011. Doc. 23 at 16. Under 29 C.F.R. § 1614.105(a)(1), a federal employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." Plaintiff's informal consultation occurred in July 2012, *see* Doc. 26-2, well past the 45-day deadline. Therefore, even assuming *arguendo* that Plaintiff's third allegation is not jurisdictionally barred, the court, nonetheless recommends that it be dismissed as untimely.

In her response to the Motion to Dismiss, Plaintiff implicitly concedes that, if they are construed as discrete incidents, these adverse actions would be barred. *See* Doc. 23 at 13-14 (noting that whether these incidents are barred from consideration depends on whether they are discrete incidents). She contends, however, that they are not discrete incidents but rather, are "part of a hostile work environment continuing violation" — as described by the Supreme Court in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) — that culminated in her transfer to the SRP. *Id*. at 14-17. Plaintiff's attempt to bootstrap these allegations to the SRP transfer is problematic for two primary reasons.

First, after reviewing her formal EEO complaint [Doc. 18-8], the court concludes that Plaintiff did not allege a hostile work environment claim.[5] The only allegations in Plaintiff's formal EEO complaint that could be considered suggestive of a hostile work environment (or retaliatory harassment) claim are those concerning Mr. Passahow. Plaintiff's unedited statement regarding Mr. Passahow reads:

> January 2011 around this time, I had complained about being sexually harassed it was during this time that a new manager had arrived at the clinic, his name was Mr. Passahower [sic]. Around May of 2011, he started giving me a hard time at work. I had told the chain of command that I would file retaliation charges against Mr. Passahower [sic] telling him to leave me alone. He left me alone, he was on probation at that point. I had already known he would take action around May 2012 because his probation had already lifted around that time.

*Id.* at 2. Other than this, however, there are no specific allegations regarding Mr. Passahow's conduct toward Plaintiff. Plaintiff's bare statement that Mr. Passahow gave her "a hard time at work" does nothing to covey whether his conduct was physically threatening, how often he acted in such a manner, or how his behavior interfered with her work performance. Without more, it is impossible to determine whether this conduct amounted to "the ordinary, if occasionally unpleasant, vicissitudes of the workplace [or] actual harassment." *Noviello*, 398 F.3d at 92 (citing *Faragher*, 524 U.S. at 788).

---

[5] Plaintiff does not specify whether she is claiming hostile work environment or retaliatory harassment. *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998) (recognizing that retaliatory harassment, if sufficiently severe, may constitute an adverse employment action upon which a Title VII retaliation claim may be based). For the purposes of this analysis, however, the distinction is irrelevant. Under either theory the harassment "must be objectively and subjectively offensive, and 'must rise to some level of substantiality.'" *Lujan v. Johanns*, 181 F. App'x 735, 738 (10th Cir. May 25, 2006) (unpublished). "Courts must mull the totality of the circumstances and the factors, including the frequency and severity of the harassment, whether it is physically threatening or humiliating, and whether it interferes with an employee's work performance." *Id.* (citing *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005) (adapting hostile work environment standards set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) to retaliatory harassment claims)).

And even considering Plaintiff's formal EEO complaint as a whole — including those allegations regarding her transfer to the SRP, and her colleagues' refusal to provide statements in an EEO investigation — it cannot be said that the statements fairly allege a hostile work environment or that a reader would understand it to include such a charge.[6] *See Faragher*, 524 U.S. at 788 (noting that the hostile or abusive "conduct must be extreme to amount to a change in the terms and conditions of employment"); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.") (internal quotation marks and citations omitted). *Compare Morris v. City of Colorado Springs*, 666 F.3d 654, 666 (10th Cir. 2012) ("A plaintiff does not make a sufficient showing of pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs. Instead, there must be a steady barrage of opprobrious comments.") (internal quotation marks and citations omitted), *with Chavez v. New Mexico*, 397 F.3d 826, 833-36 (10th Cir. 2005) (finding sufficient evidence of hostile work environment where there was evidence that the plaintiffs had been subjected to both a "number of gender-based incidents" occurring over a long period of time, including sexual propositions, and "multiple incidents of hostile and physically threatening conduct").

Second, Plaintiff's argument is undermined by her own interaction with the Equal Employment Office. After receiving Plaintiff's formal EEO complaint, the EEO manager notified Plaintiff that she had "accepted the following claim for investigation":

> Was Ms. Cook discriminated against based on reprisal . . . on 29 May 2012 when SSG Marian Niemotko (NCOIC of Larson Clinic) reassigned her to the Soldier Readiness Processing Center?

---

[6] The court's conclusion is also supported by the fact that, in her request for relief, the only relief sought related to Plaintiff's transfer to the SRP and the loss of her AWS. *See* Doc. 18-8 at 2 (requesting the reinstatement of her AWS).

Doc. 29-1 at 1. The notice also informed Plaintiff that if she did not agree with the accepted claim she should notify the manager within five calendar days, and that if she did not, the manager would conclude that the claim had been properly identified. *Id.* There is no evidence that Plaintiff voiced any disagreement with the issue as stated by the EEO. Indeed, the final agency decision, issued by the ALJ, restates the sole issue as whether Sgt. Niemotko retaliated against Plaintiff by transferring her to the SRP. *See* Doc. 29-2 at 4. Plaintiff's failure to respond to the framing of the issue supports a finding that she did not exhaust her administrative remedies with respect to a hostile work environment (or retaliatory harassment) claim.

The instant matter is similar to the circumstances addressed by the United States District Court for the District of Columbia in *Dick v. Holder*, ___ F.Supp.3d ___, 2015 WL 691189 (D.D.C. Feb. 19, 2015). There, the plaintiff contended that "the package containing his formal EEO charge" included a copy of a letter that he had sent to an EEO counselor prior to filing the formal charge. *Id.* at *6, ___ F.Supp.3d at ___. He argued that this letter allegedly contained certain Rehabilitation Act claims that should be incorporated into his formal charge, despite not being raised in the charge itself. *Id.* Even accepting as true that the letter had been attached to the formal EEO charge, the district court, nevertheless, determined that the plaintiff had failed to exhaust his administrative remedies with respect to those "incorporated" claims. *See id.* The court concluded that — because the plaintiff had failed to contest the absence of the Rehabilitation Act claims from the EEOC's letter identifying the claims — the absent claims could no longer arise from the administrative investigation that could reasonably be expected to follow the charge of discrimination. *Id.* The district court explained:

> An agency may not unreasonably omit claims from investigation, in hopes that a complainant's tardy realization of the omission will constitute a failure to exhaust.

. . .

> [But] where an agency reasonably fails to identify for investigation a claim indirectly asserted in a plaintiff's administrative charge, and where the plaintiff does not object to the omission before the agency, the plaintiff cannot show that he has exhausted administrative remedies as to this claim.

*Id*. at *7-8, ___ F.Supp.3d at ___. After finding that the plaintiff's formal EEO charge neither explicitly incorporated the letter, nor mentioned the Rehabilitation Act claims, the district court concluded that the agency's omission of the claims was not unreasonable, and, therefore, the Plaintiff had failed to exhaust those claims. *Id*.

The present case presents a similar scenario to that in *Dick*. As previously discussed, this court concludes that Plaintiff's formal EEO complaint did not fairly allege a hostile work environment (or retaliatory harassment) claim; thus, the agency's omission of such a claim from its investigation was not unreasonable. Because Plaintiff failed to respond to a reasonable request to clarify the scope and nature of her claim, the court concludes that she failed to exhaust a hostile work environment (or retaliatory harassment) claim. *See Dick*, at *7-8, ___ F.Supp.3d at ___; *Robinson v. Chao*, 403 F.Supp.2d 24, 29 (D.D.C. 2005) ("Plaintiff had an obligation to respond to reasonable requests in the course of the agency's investigation of her discrimination claims. She did not fulfill that request, and, therefore, she did not exhaust her administrative remedies concerning those claims before filing them in this Court."); *Clayton v. Rumsfeld*, No. SA-02-CA-231 EP, 2003 WL 25737889, at *3 (W.D. Tex. Aug. 8, 2003) ("Failure to object to the framing of the issue by the EEOC and the ALJ constitutes an abandonment of the claim."); *see also Cole v. McHugh*, 855 F.Supp.2d 1253, 1265 (D. Colo. 2012) (in concluding that the plaintiff had failed to exhaust his administrative remedies as to his negative reference retaliation claim, the court noted that the issues accepted for investigation did not include this negative reference retaliation claim).

Based on the foregoing, the court concludes that Plaintiff only exhausted her administrative remedies with respect to her transfer to the SRP. Consequently, the court recommends that Defendant's motion to dismiss be granted as to Plaintiff's allegations that Defendant retaliated against her when (1) she was transferred from the front desk to the x-ray room; (2) her clinical privileges were suspended; and (3) Mr. Passahow gave her "a hard time at work."

## II.     Retaliation

Although it is undisputed that Plaintiff engaged in protected activity when she filed the October 2010 EEO Complaint, *see* Doc. 18 at 13, Defendant moves for summary judgment on the basis that Plaintiff cannot establish a prima facie case of retaliation. The court agrees the summary judgment is warranted.

### A.  Legal Framework

In *McDonnell Douglass Corp v. Green*, 411 U.S. 792, 802-03 (1973), the Supreme Court established a burden-shifting framework for Title VII employment discrimination cases. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). Under this framework, the plaintiff has the burden of establishing a prima facie case of retaliation by a preponderance of the evidence. *McDonnell Douglass*, 411 U.S. at 802.

To establish a prima facie case of reprisal, a Plaintiff must demonstrate three elements: (1) she engaged in protected activity; (2) her employer took action that a reasonable employee would have found to be materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Carney v. City and County of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006)).

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant employer to articulate a legitimate and nondiscriminatory reason for the adverse employment action. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). This burden is one of production. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). If the employer successfully states a non-discriminatory or non-retaliatory impetus for its actions, the plaintiff may then present evidence to show that the employer's rational is pretextual. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008). "Mere conjecture that the employer's explanation is pretextual is insufficient to defeat summary judgment." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Morgan*, 108 F.3d at 1323)).

### B. Analysis

#### 1. Adverse Employment Action

Adverse action is defined in the Tenth Circuit as conduct that has a materially adverse impact on the employee's job status. *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1230 (10th Cir. 2004). The Supreme Court has defined adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998). *See also Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) ("There must be a material change in employment status-a reduction in title, salary, or benefits.") (internal quotation marks and citations omitted). The alleged adverse action

must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse,* 673 F.3d 141, 150 (2d Cir. 2012).

The Fourth Circuit has held that without a reduction of compensation, negative change in job title or responsibility, or loss of opportunity for promotion, "reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks and citation omitted).   The Seventh Circuit has similarly found that no materially adverse employment action existed in an age discrimination suit despite plaintiff's allegations that the employer assigned her the most difficult work assignments and assignments outside of her job responsibilities, required her to complete coworkers' assignments, required her to work varying shifts instead of a regularly scheduled shift, forced her to travel farther in comparison to her coworkers by transferring her to a distant office, denied her annual leave, issued her letters of warning, and subjected her to unreasonable demands. *See Griffin v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004).

Here, Plaintiff contends that she suffered materially adverse employment actions. In making this argument, she relies primarily upon discrete, unexhausted actions: (1) the suspension of her clinical privileges; (2) her transfer to the x-ray room; and (3) Mr. Passahow's alleged harassing behavior. But as previously discussed, Plaintiff did not exhaust her administrative remedies with respect to these incidents, nor are they part of a hostile work environment continuing violation; Plaintiff only exhausted her administrative remedies with respect to her transfer to the SRP and the attendant loss of her AWS.

17

The question, then, is whether a reasonable person would be deterred from engaging in protected activity if she knew that she would be moved to the SRP. In this case, the answer is no. Plaintiff may have desired to stay at the Larson Clinic and maintain an AWS, but she has identified no specific rational — other than her subjective preference — for why her move to the SRP would constitute a significant change in employment status. Plaintiff argues, hypothetically, that a seemingly "minor schedule change . . . could very adversely affect a young mother with school age children." Doc. 23 at 18. Importantly, however, she does not present any evidence that this reason actually applies to her. Consequently, she has failed to meet the test of materiality. *See McGowan v. City of Eufala*, 472 F.3d 736, 742-43 (10th Cir. 2006) (noting that the difference between the day shift and the night shift was not adverse because there were "no differences in pay and benefits, nor was the night shift more arduous," and further noting that the plaintiff's contention that the day shift was a better assignment was purely a personal preference).

The court acknowledges that many employees would prefer to work every other Friday and be able to leave early on the alternate Fridays. But this alone does not establish that assignment to a five-day work week is sufficiently material to constitute a significant change in employment status. *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 635 (10th Cir. 2012) (concluding that assignment to the night shift was not materially adverse where there was no change in salary, benefits, or duties). It is undisputed that Plaintiff's move to the SRP offered no difference in hours or pay. *See* Doc. 18-1 at 9 (confirming same hours with or without AWS); Doc. 18-6 (noting Plaintiff's pay in 2010 (pre-transfer) as $42,805.00); Doc. 18-7 (noting Plaintiff's pay in 2013 (post-transfer) as $43,824.00). And Plaintiff's responsibilities remained

the same: she was responsible for dental x-rays at the Larson Clinic and she continued to be responsible for taking dental x-rays at the SRP.

Because Plaintiff has failed to offer any evidence outside of her own personal preferences, the court concludes that there is no question of materiality for a jury to decide and, therefore, recommends that summary judgment be entered in favor of Defendant. *Daniels*, 701 F.3d at 635-36; *McGowan*, 472 F.3d at 743.

2.  Causation

Even if the court were to conclude that Plaintiff's transfer to the SRP constituted a materially adverse employment action, it would still recommend dismissal because she has failed to demonstrate causation. "[A] causal connection is established where the plaintiff presents 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (quoting *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1318 (10th Cir. 1999)). "Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). The Tenth Circuit has held that a one and one-half month period between protected activity and the adverse employment action may, on its own, establish causation. *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kansas Medical Center*, 163 F.3d 1186, 1194 (10th Cir. 1998). By contrast, the Tenth Circuit has also held that a three-month period, alone, is insufficient to support a prima facie case of retaliation. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

Here, Plaintiff's protected activity took place in October 2010. *See* Doc. 26-9 at 2 (noting the basis of reprisal was "filed formal on 25 October 2010"). She was ultimately transferred to the SRP in May 2012, over 18 months after the protected activity. Perhaps cognizant of the fact that an 18-month period, alone, is insufficient to support a prima facie case of retaliation, Plaintiff attempts to proffer additional evidence of causation.[7] Her efforts, however, are not persuasive.

Plaintiff begins by alleging that she initiated an informal complaint with the EEO on April 15, 2010, and then, two weeks later, she received a one-day suspension. Doc. 23 at 19. These events, however, have no logical bearing on the issues presented in this case. Plaintiff's claim, here, is that the Army retaliated against her in 2012 because she filed a formal complaint in October 2010. Events that took place six months *prior* to the October 2010 protected conduct are not relevant to the question of causation.[8]

Plaintiff also relies on the permanent suspension of her clinical privileges. Doc. 23 at 19. However, this evidence does not support causation because the process to suspend Plaintiff's clinical privileges began prior to the October 2010 EEO Complaint. *See* Doc. 18-10 (notifying Plaintiff in July 2010 that her clinical privileges had been placed in abeyance pending the outcome of due process proceedings). *Clark Cnty. Sch. Dist. V. Breeden*, 532 U.S. 268, 272 (2001) (where an employer was contemplating an employee's transfer before it learned of the

---

[7] Her evidence again includes those allegations that were not administratively exhausted. Even if the court can consider these allegations, they do not create a genuine issue as to causation.

[8] Furthermore, the April 2010 informal complaint takes issue with wholly separate adverse actions. In April 2010, Plaintiff alleged that she had been discriminated against based on her national origin when (1) she was issued a one-day suspension; (2) the Larson Clinic dentists were instructed to review Plaintiff's clinical procedures; and (3) Plaintiff's retention pay was terminated. Doc. 23-8 at 2. However, the October 2010 EEO Complaint was based on (1) a change in Plaintiff's performance ratings; and (2) the removal of Plaintiff's clinical privileges. *See* Doc. 7 at ¶ 10; Doc. 23-9 at 2. Thus, to the extent that Plaintiff is attempting to argue that the April 2010 informal complaint was simply an earlier stage of the October 2010 EEO Complaint, such arguments are belied by the record.

employee's suit, the fact that the transfer ultimately happened after the employer learned of the suit was immaterial). "Employers need not suspend previously planned [employment actions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id.*

The court also concludes that Plaintiff's evidence regarding Mr. Passahow's behavior is unavailing; there is no evidence that Mr. Passahow knew that Plaintiff had engaged in the protected activity. "To establish a causal connection, [Plaintiff] must show that the individuals who took adverse action against [her] knew of [her] protected [activity]." *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009) (citing *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)). During her deposition, when asked whether Mr. Passahow knew of her EEO complaints, Plaintiff only speculated that Mr. Passahow would have known based upon office gossip. Doc. 18-1 at 16 (stating that she was "guessing" Mr. Passahow knew about the prior complaints).[9] Plaintiff's speculative belief is insufficient to create a material dispute of fact for the jury. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997) (a witness' unsupported statement that a supervisor was a bigot "amounts to no more than [the witness'] opinion and is inadequate summary judgment evidence of discriminatory animus").

### 3. Non-retaliatory Impetus

Assuming *arguendo* that Plaintiff could establish a prima facie case of retaliation, summary judgment would still be warranted. Plaintiff has failed to establish that Defendant's articulated reasons for the transfer were pretext for discrimination.

In her response brief, Plaintiff contends that Defendant failed to articulate a legitimate non-retaliatory reason for her transfer because it failed to specify (1) any patient who was

---

[9] In addition, Plaintiff testified that Mr. Passahow had been harassing her because he was a friend of Mr. Turner, an employee Plaintiff had accused of sexual harassment. Doc. 18-1 at 12. And she stated that she actually did not know if Mr. Passahow's behavior was linked to her EEO history. *Id.*

harmed by Plaintiff; (2) dates on which she engaged in inappropriate practice; or (3) any procedures that were performed incorrectly. Doc. 23 at 20-21. And she argues that she has established pretext because there is evidence that she received good performance ratings, which makes it implausible that she had engaged in substandard practice. *Id*. at 21. These arguments miss the mark.

As an initial matter, Plaintiff seems to misunderstand the nature of Defendant's burden in the three-part burden shifting format. To carry its burden of production, a defendant need only:

> [A]rticulate through some proof a facially nondiscriminatory reason for the [employment action]; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied on was bona fide . . . .

*E.E.O.C. v. Flasher Co., Inc.*; 986 F.2d 1312, 1316 (10th Cir. 1992). Here, Defendant has consistently stated that Plaintiff was transferred to the SRP because of (1) the high volume of x-rays being taken at the SRP; (2) the effort required to rotate x-ray technicians to the SRP on a daily basis; and (3) the fact that Plaintiff was underutilized at the Larson Clinic, given the restrictions on her practice. Doc. 18 at 16; Doc. 18-4 at 9-10. Contrary to Plaintiff's assertion, the Army is not required to provide evidence to justify its articulated reason or to persuade the court that its reason was correct. Rather, once Defendant articulated the reason for Plaintiff's transfer, it was her burden to persuade the court that this reason was unworthy of belief. She has failed to tender any facts to support her assertion of pretext.

Pretext can be shown by evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.,* 108

F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks and citations omitted).   Here, Plaintiff strenuously relies on Defendant's lack of evidence to support its claims that she harmed patients or performed improper procedures. And she asserts that Defendant's allegations of substandard clinical practice on her part are inconsistent, implausible, and contradictory. *See* Doc. 23 at 21. Plaintiff also argues that Defendant failed to follow its own policies because it did not put her on a performance improvement plan for her "unsatisfactory performance." *Id*. at 22. However, none of these arguments actually address Defendant's articulated reasons for Plaintiff's transfer. Defendant's proffered reasons for the transfer are unrelated to Plaintiff's performance; instead, the transfer was allegedly born out of a staffing need at the SRP, and out of the fact that Plaintiff was underutilized at the Larson Clinic. Doc. 18 at 16; Doc. 18-4 at 9-10.

Because Plaintiff has totally failed to address Defendant's non-discriminatory reasons for her transfer to the SRP, the court concludes that there is no dispute of material facts as to whether Defendant's proffered reasons are pretextual.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the court RECOMMENDS that Defendant's Motion to Dismiss for Lack of Jurisdiction and for Summary Judgment [Doc. 18] be GRANTED and that this case be dismissed with prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. Once Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the district court of the magistrate judge's proposed findings and recommendations and will result in waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve the issue for *de novo* review by the district court or appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 26th day of May, 2015.


BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge